UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODNEY BERNARD BARNO,<br>Plaintiff,<br>v.<br>ARMANDO PADILLA, et al.,<br>Defendants. | Case No. 20-cv-03886-SI<br><br>**ORDER OF SERVICE**<br>Re: Dkt. Nos. 1, 5 |

Rodney Barno, a California prisoner incarcerated at the Correctional Training Facility in Soledad, filed this *pro se* civil rights action under 42 U.S.C. § 1983. His complaint is now before the court for review under 28 U.S.C. § 1915A. This order also addresses his motion for law library access.

**BACKGROUND**

In his complaint, Barno alleges the following about events and omissions that occurred at the Correctional Training Facility in Soledad:

On February 8, 2019, correctional officer (C/O) Woods threatened Barno with false disciplinary charges after Barno asked for appeal forms to report harassment and retaliation due to C/O Campagna's threats to house Barno with incompatible cellmates. C/O Campagna told Barno that Padilla would hear the rule violation report and give him the maximum punishment. Correctional sergeant Saint-Louis then put Barno in painfully tight handcuffs and made him stay outside in cold temperatures without shoes, socks, jacket or pants. When Barno complained of the pain caused by the handcuffs and the cold temperatures, Saint-Louis responded with threats of force with his spray and baton and said he "should slam [Barno] to the ground." Docket No. 1 at 9.

On February 11, 2019, C/O Campagna tried to dissuade Barno from helping another inmate with a legal problem, conceded that he changed the facts in a rule violation report, and told Barno that if he continued to file appeals, "things wouldn't be good" for Barno. *Id.*

C/O Woods and Campagna followed up on their retaliatory threats and, on February 12, 2019, caused Barno to receive a false disciplinary charge. Barno was found guilty by correctional lieutenant Padilla on March 8, 2019, and received the maximum punishment in retaliation for filing appeals. On March 13, 2019, correctional sergeant Kuster retaliated against Barno for filing appeals by subjecting him to punitive housing conditions, where he was housed with inmates with serious behavioral problems and exposed to unpleasant conditions.

On October 8, 2018, C/O Campagna conducted a search on Barno's living quarters, and left Barno's searched property scattered and unsecure in the dormitory setting, in retaliation because Barno "exercised his right to free speech when he was overheard telling another inmate that a specific sgt. resembled another officer." *Id.* at 11.

On July 21, 2019, C/O Campagna forced Barno to be housed with an incompatible cellmate, as he had threatened to do in the past.

A disciplinary hearing was held on March 8, 2019, for a rule violation report for alleged misconduct occurring on February 8, 2019. Correctional lieutenant Padilla was the senior hearing officer. Padilla was not fair and impartial due to Barno's past grievance and litigation filing activities, as well as because he made a statement in advance of the hearing that suggested to Barno that Padilla had a predetermined belief in Barno's guilt. *Id.* at 13-14, 16. Lieutenant Padilla failed to follow various regulations in the ways listed in the complaint and "imposed the maximum punishment." *Id.* at 14-15. Padilla found him guilty and imposed the maximum punishment "in retaliation for filing appeals." *Id.* at 9.

Lieutenant Padilla, sergeant Saint-Louis, and C/O Campagna "threatened" Barno if he continued litigation against them by filing this action. *Id.* at 8.

In or about June 2018, Barno wrote a letter to a family member. C/O Lara "redact[ed]" the letter "with a magic marker to the point the letter couldn't be understood" and stole five books of stamps from the envelope. *Id.* at 17.

**DISCUSSION**

A. Review of Complaint

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review the court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id.* at § 1915A(b)(1),(2). *Pro se* pleadings must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

Retaliation: The elements of a retaliation claim are (1) that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). Liberally construed, the complaint states a cognizable claim against defendants Woods, Campagna, Saint-Louis, Padilla, and Kuster for retaliation based on their adverse actions against Barno in response to his First Amendment activities.

Disciplinary hearing: The Due Process Clause of the Fourteenth Amendment of the U.S. Constitution protects individuals against governmental deprivations of life, liberty or property without due process of law. Interests that are procedurally protected by the Due Process Clause may arise from two sources: the Due Process Clause itself and laws of the states. *See Meachum v. Fano*, 427 U.S. 215, 223-27 (1976). In the prison context, these interests are generally ones pertaining to liberty. Changes in conditions so severe as to affect the sentence imposed in an unexpected manner implicate the Due Process Clause itself, whether or not they are authorized by state law. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995) (citing *Vitek v. Jones*, 445 U.S. 480, 493

1    (1980) (transfer to mental hospital), and *Washington v. Harper*, 494 U.S. 210, 221-22 (1990)
2    (involuntary administration of psychotropic drugs)).  Deprivations that are less severe or more
3    closely related to the expected terms of confinement may also amount to deprivations of a
4    procedurally protected liberty interest, provided that the liberty in question is one of "real
5    substance." *Id.* at 477-87.  An interest of "real substance" will generally be limited to freedom from
6    restraint that imposes an "atypical and significant hardship on the inmate in relation to the ordinary
7    incidents of prison life" or "will inevitably affect the duration of [a] sentence." *Id.* at 484, 487.  If
8    the prisoner is deprived of an interest of real substance in a disciplinary decision, the procedural
9    protections identified in *Wolff v. McDonnell*, 418 U.S. 539, 564-67 (1974), must be provided.

       Here, an exhibit submitted in support of the complaint shows that the discipline imposed consisted of a loss of 20 days of time credits, 90 days of privilege restrictions (i.e., put on Privilege Group C, and lost canteen, phone, yard recreation, day room, and packages for 90 days), and 90 days of property restrictions.  Docket No. 7 at 24.  The due process claim falters because the discipline imposed did not amount to a deprivation of an interest of real substance under *Sandin*. Without the deprivation of an interest of real substance, Barno's federal right to due process was not implicated and the *Wolff* protections were not required.

       The loss of time credits will not "inevitably affect the duration of [the] sentence," *Sandin*, 515 U.S. at 487, because Barno is serving an indeterminate sentence of 50-years-to-life.  *See Barno v. Koenig*, 19-8142 WHO, Docket No. 1 at 1 (habeas petition identifying his sentence as 50-to-life). Regardless of the loss of 20 days of credits, Barno must be found suitable for parole before he may be released from custody on his indeterminate sentence.  The possibility that the presence of the rule violation report or disciplinary decision in Barno's prison file might someday negatively impact his parole prospects does not give rise to a right to due process because "[t]he chance that a finding of misconduct will alter the balance [of the parole suitability determination] is simply too attenuated to invoke the procedural guarantees of the Due Process Clause." *Sandin*, 515 U.S. at 487.

       The additional discipline -- 90 days of loss of privilege and property restrictions -- was a temporary situation of the sort that courts have repeatedly held does not amount to the "atypical and significant hardship" that *Sandin* requires for a right to due process to exist.  *See Sandin*, 515 U.S.

4

1  at 487 (imposition of 30-day term in disciplinary segregation did not amount to an atypical and
2  significant hardship); *Myron v. Terhune*, 476 F.3d 716, 718-19 (9th Cir. 2007) (classification for
3  California Level IV prison rather than Level III prison not shown to be an atypical and significant
4  hardship; refusal to allow prisoner to publish and distribute an inmate publication not an atypical
5  and significant deprivation); *Mujahid v. Meyer*, 59 F.3d 931, 932 (9th Cir. 1995) (under *Sandin*, no
6  liberty interest when inmate placed in disciplinary segregation for 14 days); *see also Winston v.*
7  *Scott*, 718 F. App'x 438, 439 (7th Cir. 2018) (disciplinary punishment that amounted to loss of
8  privileges for 90 days "is not a deprivation of a protected liberty interest; thus due process is not at
9  play"); *Alexander v. Vittitow*, 2017 WL 7050641, at *3 (6th Cir. Nov. 9, 2017) ("The sanction
10 imposed for Alexander's misconduct charge—thirty days' loss of privileges—did not implicate a
11 protected liberty interest because it did not affect the length of his sentence and did not amount to
12 an atypical and significant hardship."); *Morgal v. Williams*, 609 F. App'x 366, 367 (9th Cir. 2015)
13 ("Dismissal of Morgal's due process claim based on his removal from his paid work assignment and
14 the loss of privileges was proper because these allegations do not give rise to a constitutionally
15 protected liberty or property interest."); *Borcsok v. Early*, 299 F. App'x 76, 78 (2d Cir. 2008) (90-
16 day confinement in segregated housing with accompanying loss of privileges did not amount to an
17 atypical and significant hardship warranting federal due process protections).

18 The complaint does not state a claim for a violation of Barno's right to due process because
19 the disciplinary punishment imposed did not amount to a deprivation of a protected liberty interest
20 under *Sandin*. The due process claim is dismissed.[1] Leave to amend is not granted because it would
21 be futile.

22 <u>Mail interference</u>: Prisoners enjoy a First Amendment right to send and receive mail. *See*
23 *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995). Censorship of outgoing mail is justified only if
24 (1) the regulation or practice in question furthers one or more of the substantial governmental
25 interests of security, order and rehabilitation, and (2) the limitation on First Amendment freedoms

---

[1] Although a due process claim is not stated against defendant Padilla, the disciplinary proceedings are not irrelevant. A retaliation claim is stated against Padilla, as discussed earlier, and his allegedly retaliatory acts include finding Barno guilty and imposing the maximum punishment at the disciplinary hearing.

is no greater than necessary to further the particular government interest involved. *See Procunier v. Martinez*, 416 U.S. 396, 413 (1974), *overruled on other grounds, Thornburgh v. Abbott*, 490 U.S. 401, 413-14 (1989). A district court reviewing whether a prisoner states a claim for the censorship of outgoing mail should not decide, on the pleadings, whether the alleged censorship is justified. *See Barrett v. Belleque*, 544 F.3d 1060, 1062 (9th Cir. 2008) (per curiam).

Liberally construed, the complaint states a cognizable claim against defendant Lara for a violation of Barno's First Amendment right to send mail based on the allegation that Lara marked up an outgoing letter with a magic marker so extensively as to make it unreadable.

Theft of postage stamps: The allegation that Lara also stole several books of stamps from the envelope containing the letter that he marked up does not state a claim. Allegations that a plaintiff has been deprived of his property negligently or intentionally without a pre-deprivation hearing do not state a due process claim under § 1983 if the deprivation was random and unauthorized, *see Parratt v. Taylor*, 451 U.S. 527, 535-44 (1981) (state employee negligently lost prisoner's hobby kit), *overruled in part on other grounds, Daniels v. Williams*, 474 U.S. 327, 330-31 (1986); *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (intentional destruction of inmate's property), because California provides an adequate state post-deprivation remedy, *see Zinermon v. Burch*, 494 U.S. 113, 128-29 (1990) (where state cannot foresee and therefore provide meaningful hearing prior to deprivation, statutory provision for post-deprivation hearing or common law tort remedy for erroneous deprivation satisfies due process). The allegation in the complaint shows a random and unauthorized property deprivation that is not actionable under § 1983.

The theft might support a state law claim, but Barno has not alleged a state law claim and it appears that he will be unable to do so. The California Tort Claims Act, *see* Cal. Gov't Code §§ 810, et seq. -- commonly referred to as the California Government Claims Act by the courts, *see City of Stockton v. Sup. Ct.*, 42 Cal. 4th 730, 741-42 (Cal. 2007) -- requires a person to present his claim to the California Victim Compensation and Government Claims Board ("Board") before he may file an action for damages against a California governmental entity or employee "for death or for injury to person or to personal property." Cal. Gov't Code § 911.2; *see* Cal. Gov't Code §§ 905.2, 911.2, 945.4, 950.2. The Government Claims Act has strict time limits for filing such a claim with the

1   Board and for filing an action in court after the rejection of such a claim. A claimant must present
2   his claim to the Board within six months of the accrual of the cause of action. *See* Cal. Gov't Code
3   § 911.2. Additionally, an action against a governmental entity or employee covered by the claims-
4   presentation requirement must be filed within six months following written notice of rejection of
5   the claim by the Board. *See* Cal. Gov't Code § 945.6(a)(1). Timely claim presentation is "a
6   condition precedent to plaintiff's maintaining an action against [a state employee or entity]
7   defendant." *California v. Superior Court (Bodde)*, 32 Cal. 4th 1234, 1240 (Cal. 2004). The failure
8   to include the necessary allegations about claim presentation makes the complaint subject to attack
9   for failure to state a cause of action. *Id.*

10   Barno's complaint fails to state a claim for any state law violation because the complaint
11   does not allege compliance with the claim presentation requirement. If, despite his failure to
12   mention it in his complaint, Barno *did* comply with the claims-presentation requirement, he may
13   file an amendment to his complaint within **thirty days** of the date of this order to allege his state
14   law claim regarding the theft of the stamps. In such an amendment, he must allege facts showing
15   when he presented his claim and when that claim was rejected, so that it may be determined whether
16   this action was filed within the time limit for any state law claim. Barno also must identify the
17   particular state law claim he asserts, link the individual defendant to the claim, and allege that he is
18   invoking the court's supplemental jurisdiction over the state law claim.

20   B. Motion for Law Library Access

21   Barno has requested that the court order prison officials to give him more access to the law
22   library. He points out that, during July 2020, general library users in his housing unit were scheduled
23   for only 2.5 hours of law library access. Docket No. 5 at 4. He indicates that there were (and maybe
24   still are) restrictions on law library access due to Covid-19, but that the state regulations call for a
25   greater degree of access than has been provided. Absent unusual and compelling circumstances not
26   present here, federal courts generally are discouraged from interfering with day-to-day prison
27   administration decisions. *See Turner v. Safley*, 482 U.S. 78, 84–86 (1987); *Wright v. Rushen*, 642
28   F.2d 1129, 1132 (9th Cir.1981) (courts should avoid enmeshing themselves in minutiae of prison

operations in name of constitution). An order giving plaintiff special access to the law library would be particularly intrusive into prison operations at a time when many prisoners want access to the law library and officials are attempting to deal with the Covid-19 pandemic in the prison setting. Moreover, the relief appears to be sought against nonparties as there is no indication the defendants set the law library schedule. The motion for law library access is DENIED. Docket No. 5.

**CONCLUSION**

1. Liberally construed, the complaint states cognizable § 1983 claims against defendants Padilla, Campagna, Saint-Louis, Woods, and Kuster for retaliation, and against defendant Lara for violating Barno's First Amendment right to send mail. All other claims and defendants are dismissed.

2. The clerk shall issue a summons and the United States Marshal shall serve, without prepayment of fees, the summons, and a copy of the complaint, and a copy of this order upon the following persons, all of whom apparently work at the Correctional Training Facility in Soledad:

- Armando Padilla (correctional lieutenant)
- Derrek Campagna (correctional officer)
- Alvin Saint-Louis (correctional sergeant)
- Gaylen Woods (correctional officer)
- A. Kuster (correctional officer)
- E. Lara (correctional officer)

3. In order to expedite the resolution of this case, the following briefing schedule for dispositive motions is set:

a. No later than **January 29, 2021**, defendants must file and serve a motion for summary judgment or other dispositive motion. If defendants are of the opinion that this case cannot be resolved by summary judgment, defendants must so inform the court prior to the date the motion is due. If defendants file a motion for summary judgment, defendants must provide to plaintiff a new *Rand* notice regarding summary judgment procedures at the time they file such a motion. *See Woods v. Carey*, 684 F.3d 934, 939 (9th Cir. 2012).

b. Plaintiff's opposition to the summary judgment or other dispositive motion must be filed with the court and served upon defendants no later than **March 12, 2021**. Plaintiff

must bear in mind the notice and warning regarding summary judgment provided later in this order as he prepares his opposition to any motion for summary judgment.

    c. If defendants wish to file a reply brief, the reply brief must be filed and served no later than **April 2, 2021**.

  4. Plaintiff is provided the following notices and warnings about the procedures for motions for summary judgment:

> The defendants may make a motion for summary judgment by which they seek to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case. . . . Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact -- that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendants' declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial. *Rand v. Rowland*, 154 F.3d 952, 962-63 (9th Cir. 1998).

If a defendant files a motion for summary judgment for failure to exhaust administrative remedies, he is seeking to have the case dismissed. As with other defense summary judgment motions, if a motion for summary judgment for failure to exhaust administrative remedies is granted, the plaintiff's case will be dismissed and there will be no trial.

  5. All communications by plaintiff with the court must be served on a defendant's counsel by mailing a true copy of the document to defendant's counsel. The court may disregard any document which a party files but fails to send a copy of to his opponent. Until a defendant's counsel has been designated, plaintiff may mail a true copy of the document directly to defendant, but once a defendant is represented by counsel, all documents must be mailed to counsel rather than directly to that defendant.

  6. Discovery may be taken in accordance with the Federal Rules of Civil Procedure. No further court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16 is required

before the parties may conduct discovery.

7. Plaintiff is responsible for prosecuting this case. Plaintiff must promptly keep the court informed of any change of address and must comply with the court's orders in a timely fashion. Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b). Plaintiff must file a notice of change of address in every pending case every time he is moved to a new facility.

8. Plaintiff is cautioned that he must include the case name and case number for this case on any document he submits to this court for consideration in this case.

9. Plaintiff's request for an order compelling law library access is DENIED. Docket No. 5.

**IT IS SO ORDERED**.

Dated: November 6, 2020

_____
SUSAN ILLSTON
United States District Judge